## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

MILLENNIUM FUNDING, INC., 211
PRODUCTIONS, INC., SCREEN MEDIA
VENTURES, LLC, VOLTAGE
HOLDINGS, LLC, EVE NEVADA, LLC,
MILLENNIUM MEDIA, INC., PARADOX
STUDIOS, LLC, DALLAS BUYERS
CLUB, LLC, DAY OF THE DEAD
PRODUCTIONS, INC., WONDER ONE,
LLC, FW PRODUCTIONS, LLC,
MILLENNIUM IP, INC., HUNTER
KILLER PRODUCTIONS, INC., I AM
WRATH PRODUCTIONS, INC., FAMILY
OF THE YEAR PRODUCTIONS, LLC,
AMBI DISTRIBUTION CORP.,  KILLING
LINK DISTRIBUTION, LLC, BADHOUSE
STUDIOS, LLC, LF2 PRODUCTIONS,
INC., LHF PRODUCTIONS, INC.,
LAUNDRY FILMS, INC., VENICE PI,
LLC,  RAMBO V PRODUCTIONS, INC.,
SPEED KILLS PRODUCTIONS, INC.,
NIKOLA PRODUCTIONS, INC.,
BODYGUARD PRODUCTIONS, INC.,
MILLENNIUM SPVH, INC. and OUTPOST
PRODUCTIONS, INC.,

     Plaintiffs,

     v.

LEASEWEB USA, INC. and DOES 1-100,

     Defendants.

Civil Action No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

MILLENNIUM FUNDING, INC., 211 PRODUCTIONS, INC., SCREEN MEDIA

VENTURES, LLC, VOLTAGE HOLDINGS, LLC, EVE NEVADA, LLC, MILLENNIUM

MEDIA, INC.,  PARADOX STUDIOS, LLC, DALLAS BUYERS CLUB, LLC, DAY OF THE

DEAD PRODUCTIONS, INC., WONDER ONE, LLC, FW PRODUCTIONS, LLC,

MILLENNIUM IP, INC., HUNTER KILLER PRODUCTIONS, INC., I AM WRATH

20-023I

PRODUCTIONS, INC., FAMILY OF THE YEAR PRODUCTIONS, LLC, AMBI DISTRIBUTION CORP., KILLING LINK DISTRIBUTION, LLC, BADHOUSE STUDIOS, LLC, LF2 PRODUCTIONS, INC., LHF PRODUCTIONS, INC., LAUNDRY FILMS, INC., VENICE PI, LLC, RAMBO V PRODUCTIONS, INC., SPEED KILLS PRODUCTIONS, INC., NIKOLA PRODUCTIONS, INC., BODYGUARD PRODUCTIONS, INC., MILLENNIUM SPVH, INC., and OUTPOST PRODUCTIONS, INC. ("Plaintiffs"), by and through their counsel, bring this Complaint against LEASEWEB USA, INC. and DOES 1-100 ("Defendants") and allege as follows:

## I. NATURE OF THE ACTION

1. Plaintiffs bring this action under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, *et seq*. (the "Copyright Act"), and allege that Defendants DOES 1-100 are liable for direct infringements in violation of 17 U.S.C. §§ 106 and 501 and violations under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202.

2. Plaintiffs further allege that Defendants LEASEWEB USA, INC. ("Leaseweb") and DOES 1-10 are secondarily liable for direct infringements in violation of 17 U.S.C. §§ 106 and 501, secondarily liable for violations under DMCA, 17 U.S.C. § 1202, and liable for injunctive relief pursuant to 17 U.S.C. §§ 512(j).

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, *et seq*., (the Copyright Act), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition), and 28 U.S.C. § 1367 (supplemental jurisdiction).

20-023P

4.     Defendants solicit, transact, or are doing business within this jurisdiction, and have committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that their acts would cause injury in this jurisdiction.

5.     Defendant Leaseweb has its principal office and officers in Manassas, Virginia.

6.     Defendant Leaseweb maintains at least one data center in Manassas, Virginia.

7.     DOES 1-10 are individuals, partnerships, corporations or other fictional entities that use Leaseweb's service such as its data center in Manassas, Virginia to engage in widespread piracy of Plaintiffs' copyright protected motion pictures.

8.     DOES 11-100 are individuals (customers of Leaseweb's subscribers) that use Leaseweb's service downstream to engage in widespread piracy of Plaintiffs' copyright protected motion pictures.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and/or (c) Defendants are subject to the court's personal jurisdiction with respect to the present action.  Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases), because the Defendants or Defendants' agents resides and/or can be found in this District.

### III.     PARTIES

#### A.  The Plaintiffs

10.     The Plaintiffs are owners of the copyrights for the motion pictures (hereafter: "Works"), respectively, as shown in Exhibit "1".

11.     Plaintiff MILLENNIUM FUNDING, INC. is a Nevada corporation with its principal place of business at 318 N. Carson Street, Ste 208, Carson City, NV 89701.

3

12.     Plaintiff 211 PRODUCTIONS, INC. is a Nevada corporation with its principal place of business at 318 N. Carson Street, Ste 208, Carson City, NV 89701.

13.     Plaintiff SCREEN MEDIA VENTURES, LLC is a Delaware limited liability company with its principal place of business at 800 Third Ave., 3rd Floor, New York, NY 10022.

14.     Plaintiff VOLTAGE HOLDINGS, LLC is a Nevada limited liability company with its principal place of business at 116 N. Robertson Blvd, Suite 200, Los Angeles, CA 90048.

15.     Plaintiff EVE NEVADA, LLC is a Nevada limited liability company with its principal place of business at 116 N. Robertson Blvd, Suite 200, Los Angeles, CA 90048.

16.     Plaintiff MILLENNIUM MEDIA, INC. is a Nevada corporation with its principal place of business at 318 N. Carson Street, Ste 208, Carson City, NV 89701.

17.     Plaintiff PARADOX STUDIOS, LLC is a Delaware limited liability company with its principal place of business at 919 North Market Street, Suite 950 Wilmington, DE 19801.

18.     Plaintiff DALLAS BUYERS CLUB, LLC is a Texas limited liability company with its principal place of business at 7 Switchbud Pl, Ste 192, The Woodlands, TX 77380.

19.     Plaintiff DAY OF THE DEAD PRODUCTIONS, INC. is a Nevada corporation with its principal place of business at 318 N. Carson Street, Ste 208, Carson City, NV 89701.

20.     Plaintiff WONDER ONE, LLC is a Wyoming limited liability company with its principal place of business at 4164 Weslin Ave. Sherman Oaks, CA 91423.

21.     Plaintiff FW PRODUCTIONS, LLC is a California limited liability company with its principal place of business at 9454 Wilshire Blvd., Suite M-16 Beverly Hills, CA 90212.

22.     Plaintiff MILLENNIUM IP, INC. is a Nevada corporation with its principal place of business at 318 N. Carson Street, Ste 208, Carson City, NV 89701.

23.     Plaintiff HUNTER KILLER PRODUCTIONS, INC. is a Nevada corporation with

4

its principal place of business at 318 N. Carson Street, Ste 208, Carson City, NV 89701.

24.     Plaintiff I AM WRATH PRODUCTIONS, INC. is a California corporation with its principal place of business at 1901 Ave of the Stars Suite 1050, Los Angeles, CA 90067.

25.     Plaintiff FAMILY OF THE YEAR PRODUCTIONS, LLC is a Louisiana limited liability company with its principal place of business at Baton Rouge, LA.

26.     Plaintiff AMBI DISTRIBUTION CORP. is a Delaware corporation with its principal place of business at 3415 S. Sepulveda Blvd., 11th Fl. Los Angeles, California 90034.

27.     Plaintiff KILLING LINK DISTRIBUTION, LLC is a California limited liability company with its principal place of business at 9190 Olympic Blvd. Suite 400, Beverly Hills, CA 90212.

28.     Plaintiff BADHOUSE STUDIOS, LLC is a Wyoming limited liability company with its principal place of business at 8265 Sunset Blvd., Suite 107, West Hollywood, CA 90046.

29.     Plaintiff LF2 PRODUCTIONS, INC. is a Nevada corporation with its principal place of business at 318 N. Carson Street, Ste 208, Carson City, NV 89701.

30.     Plaintiff LHF PRODUCTIONS, INC. is a Nevada corporation with its principal place of business at 318 N. Carson Street, Ste 208, Carson City, NV 89701.

31.     Plaintiff LAUNDRY FILMS, INC. is a California corporation with its principal place of business in Venice, California.

32.     Plaintiff VENICE PI, LLC is a California limited liability company with its principal place of business at 116 N Robertson Blvd Ste #200, Los Angeles, CA 90048.

33.     Plaintiff RAMBO V PRODUCTIONS, INC. is a Nevada corporation with its principal place of business at 318 N. Carson Street, Ste 208, Carson City, NV 89701.

34.     Plaintiff SPEED KILLS PRODUCTIONS, INC. is a Wyoming corporation with its

principal place of business at 8265 Sunset Blvd., Suite 107 West Hollywood, CA 90046.

35.    Plaintiff NIKOLA PRODUCTIONS, INC. is a Nevada corporation with its principal place of business at 318 N. Carson Street, Ste 208, Carson City, NV 89701.

36.    Plaintiff BODYGUARD PRODUCTIONS, INC. is a Nevada corporation with its principal place of business at 318 N. Carson Street, Ste 208, Carson City, NV 89701.

37.    Plaintiff MILLENNIUM SPVH, INC. is a Nevada corporation with its principal place of business at 318 N. Carson Street, Ste 208, Carson City, NV 89701.

38.    Plaintiff OUTPOST PRODUCTIONS, INC. is a Nevada corporation with its principal place of business at 318 N. Carson Street, Ste 208, Carson City, NV 89701.

39.    Plaintiffs are producers of popular motion pictures currently available for sale in online and brick and mortar retail stores. Many of these critically acclaimed motion pictures were released in theaters throughout the world and feature A-list actors such as Matthew McConaughey, Samuel Jackson, Ryan Reynolds, Sylvester Stallone, Nicholas Cage, and Angela Basset, among others.

40.    Plaintiffs invested significant financial resources, time and effort in making and marketing these motion pictures based upon the expectation that they would have an opportunity to get a return on their investment from rentals and sales. Massive piracy of these motion pictures by subscribers of Defendant Leaseweb such as LiquidVPN and DOES 1-10 and the willful failure of Leaseweb to deal with this issue despite clear notice of it have hindered this opportunity.

**B.  The Defendants**

41.    Defendant Leaseweb is a corporation organized under the laws of Delaware with its principal place of operations in Manassas, Virginia.

20-023P

42.     Upon information and belief, Leaseweb is a wholly or partially owned subsidiary of the Dutch company Leaseweb Global B.V.

43.     Leaseweb operates datacenters and provides hosting services, IP addresses, Internet access, dedicated servers and co-location to its customers at its data centers.

44.     Leaseweb is a member of the American Registry of Internet Numbers ("ARIN"), which is a nonprofit, member-based organization that manages and distributes Internet number resources such as IP addresses and Autonomous System Numbers.

45.     Leaseweb's ARIN handles include "LU-76".

46.     Leaseweb is required to update the WHOIS records for the IP addresses it reassigns or reallocates to its subscribers per its registration agreement with ARIN.

47.     DOES 1-10 are subscribers of Defendant Leaseweb.

48.     DOES 1-10 provide Virtual Private Network ("VPN") services to their own subscribers referred to here as "end users" to distinguish from Leaseweb's subscribers.

49.     A VPN is a type of Internet Service that provides access to the Internet. A conventional ISP will assign its subscriber an IP address and log the subscriber's activities on the Internet while using the assigned IP address.  In comparison, many VPN providers provide their subscribers "anonymous" usage by, for example, not logging subscriber access, assigning the subscriber IP addresses that are simultaneously shared among many users, and/or encrypting traffic.

50.     DOE 1-10 promote their VPN service as a tool that can be used to pirate copyright protected content without getting caught.

51.     DOE 1-10 partner with notorious movie piracy websites to promote their VPN service as an essential tool for movie piracy.

52.     Each of DOES 11-100 is an end user assigned an IP address from one of Defendant Leaseweb's subscribers and used said IP address to download and reproduce Plaintiffs' Works without a license and further share (distribute) copies of Plaintiffs' Works from said IP address to individuals across the world exactly as instructed and encouraged to by Leaseweb's subscribers.

53.     Defendants DOES 11-100 are members of a group of BitTorrent users or peers whose computers are collectively interconnected for the sharing of a particular unique file, otherwise known as a "swarm".  The particular file a BitTorrent swarm is associated with has a unique "hash" number and a file name.

54.     Plaintiffs are informed and believe that Defendant is in possession of identification information or information that will lead to the identities of DOES 1-10 such as payment information. However, further discovery may be necessary in some circumstances in order to be certain of the identity of the proper Defendant. Plaintiffs believe that information obtained in discovery will lead to the identification of each of Defendants DOES 1-100's true names and permit the Plaintiffs to amend this Complaint to state the same.  Plaintiffs further believe that the information obtained in discovery may lead to the identification of additional infringing parties to be added to this Complaint as defendants.  Plaintiffs will amend this Complaint to include the proper names and capacities when they have been determined.  Plaintiffs are informed and believe, and based thereon allege, that each of the fictitiously named Defendants participated in and are responsible for the acts described in this Complaint and damages resulting therefrom.

**C.  Non-parties**

55.     ARIN is a nonprofit, member-based organization that manages and distributes Internet number resources such as IP addresses and Autonomous System Numbers (ASNs).

56.     Members of ARIN such as Defendant are required to agree to terms of a registration agreement.

57.     1701 MANAGEMENT LLC d/b/a LIQUIDVPN ("LiquidVPN") is a limited liability company organized under the laws of Puerto Rico.  LiquidVPN is a subscriber or former subscriber of Defendant Leaseweb.

58.     Plaintiffs have filed a civil action against LiquidVPN in the Southern District of Florida (21-cv-20862-BLOOM/Otazo-Reyes) asserting *inter alia* copyright infringement that is currently pending.

59.     ZenGuard GmbH dba ZenMate ("ZenMate") is a fictional entity organized, upon information and belief, under the laws of Germany.  ZenMate is a subscriber or former subscriber of Defendant Leaseweb.

## IV.     JOINDER

60.     Pursuant to Fed. R. Civ. P. 20(a)(1), each of the Plaintiffs are properly joined because, as set forth in detail above and below, the Plaintiffs assert: (a) a right to relief arising out of the same transaction, occurrence, or series or transactions, namely Defendant Leaseweb provides the Internet services that Defendants DOES 1-100 use to directly infringe Plaintiffs' copyright protected Works; and (b) that there are common questions of law and fact.

61.     Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants are properly joined because, as set forth in more detail below, Plaintiffs assert that the infringements complained of herein by each of the Defendants (a) arises out of the same transaction, occurrence, or series of transactions or occurrences, and (b) there are common questions of law and fact.  That is, (i) Defendant Leaseweb provides the services that Defendants DOES 1-10 use to provide their VPN service, (ii) Defendants DOES 1-10 promote their VPN service to Defendants DOES 11-100 for

the purpose of engaging in piracy, and (iii) Defendants DOES 11-100 used DOES 1-10's VPN service to infringe Plaintiffs' copyrights in their Works as instructed and encouraged to do by Defendants DOES 1-10.

## V.   FACTUAL BACKGROUND

### A. The Plaintiffs Own the Copyrights to the Works

62.    The Plaintiffs are the owners of the copyright in the Works, respectively.   The Works are the subjects of copyright registrations, and this action is brought pursuant to 17 U.S.C. § 411.  *See* Exhibit "1".

63.    Each of the Works are motion pictures currently offered for sale in commerce.

64.    Defendants had notice of Plaintiffs' rights through at least the credits indicated in the content of the motion pictures which bore proper copyright notices.

65.    Defendants also had notice of Plaintiffs' rights through general publication and advertising associated with the motion pictures, and packaging and copies, each of which bore a proper copyright notice.

66.    Defendant Leaseweb also had notice of Plaintiffs' rights through notices Plaintiffs' agent sent to Leaseweb's abuse contact as discussed below.

### B. Defendant Leaseweb's subscribers infringe Plaintiffs' Copyrights

67.    Upon information and belief, Defendant Leaseweb's subscribers (DOES 1-10) include VPN providers such as, LiquidVPN, NordVPN and ExpressVPN.

68.    Customers of Defendant Leaseweb's subscribers ("end users") (DOES 11-100) use BitTorrent to infringe Plaintiffs' exclusive rights of reproduction and distribution.

69.    Defendant Leaseweb's subscribers such as LiquidVPN and DOES 1-10 distribute Plaintiffs' Works for these end users in violation of Plaintiffs' exclusive right of distribution.

10

70.     BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

71.     The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

### 1. DOES 11-100 installed a BitTorrent Client onto his or her Computer

72.     A BitTorrent Client is a software program that implements the BitTorrent Protocol. There are numerous such software programs which can be directly downloaded from the Internet.

73.     Once installed on a computer, the BitTorrent Client serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

74.     Defendants DOES 11-100 installed a BitTorrent Client such as "Popcorn Time" as promoted by LiquidVPN onto their respective computers.

75.     The Popcorn Time promoted by LiquidVPN has been referred to in the news media as "Netflix for pirates". http://fortune.com/2016/02/26/popcorn-time-netflix-pirates/ [accessed on March 1, 2021].

76.     The United States Trade Representative ("USTR") placed the Popcorn Time promoted by LiquidVPN on a list of examples of Notorious Markets engaged in and facilitating substantial piracy. *See* USTR, 2020 Review of Notorious Markets, Jan. 14, 2021, pg. 26, Available at

https://ustr.gov/sites/default/files/files/Press/Releases/2020%20Review%20of%20Notorious%20

Markets%20for%20Counterfeiting%20and%20Piracy%20(final).pdf [last accessed on May 24, 2021].

77.     Popcorn Time provides an interface so that users can easily copy and share copies of copyright protected content, including Plaintiffs'.

78.     The home interface of Popcorn Time includes a collection of title art of popular motion pictures and a search bar where a user can enter words associated with a copyright protected motion picture they wish to copy.

79.     Simply entering words associated with a motion picture automatically generates a pull down tab below the search bar with a narrowed selection of motion pictures associated with the words.

### 2.  *The Initial Seed, Torrent, Hash and Tracker*

80.     A BitTorrent user that wants to upload the new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using, for example, the Client he or she installed onto his or her computer.

81.     The initial user or seeder of a file used a process referred to as "ripping" to create a copy of motion pictures from either Blu-ray or legal streaming services.

82.     The initial seeder often modifies the file title of the Work to include a wording such as "FGT", "RARBG" or "YTS" in the title of the torrent files and file copies in order to enhance a reputation for the quality of his or her torrent files and attract users to his or her piracy website.

83.     The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

20-023P

84.    The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Works, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

85.    When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

86.    Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

87.    The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

88.    The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

89.    Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

### 3. Torrent Sites

90.    "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol.  There are numerous torrent websites including the notorious Pirate Bay, YTS and RARBG websites.

20-023P

91.     The Pirate Bay, YTS and RARBG websites were noted by the USTR as examples of Notorious Markets defined as an online marketplace reportedly engaged in and facilitating substantial piracy. *See* USTR, 2014 Out-of-Cycle Review of Notorious Markets, Mar. 5, 2015, pg. 17, Available at https://ustr.gov/sites/default/files/2014%20Notorious%20Markets%20List%20-%20Published_0.pdf [last accessed on May 7, 2021]; USTR, *2018 Out-of-Cycle Review of Notorious Markets*, April 2019, pgs. 24, 27-28 Available at https://ustr.gov/sites/default/files/2018_Notorious_Markets_List.pdf [accessed on May 7, 2021].

### 4. End users access the torrent sites from Leaseweb IP addresses

92.     End users such as DOES 11-100 accessed torrent sites including the YTS website to upload and download Plaintiffs' copyrighted Work from IP addresses provided by Leaseweb.

### 5. The Peer Identification

93.     The BitTorrent Client will assign an identification referred to as a Peer ID to the end user's computer so that it can share content (here the copyrighted Work) with other peers.

### 6. Uploading and Downloading a Work Through a BitTorrent Swarm

94.     Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

95.     The BitTorrent protocol causes the initial seeder's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.  Defendants' subscribers (DOES 1-10) transmit the pieces to the peers.

14

96.     Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.  Defendants' subscribers (DOES 1-10) transmit the pieces to the peers.

97.     In this way, all of the peers and seeders are working together in what is called a "swarm."

98.     Here, the end users (DOES 11-100) participated in a swarm and directly interacted and communicated with other members of the swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions, Plaintiffs' Works.

99.     Defendant Leaseweb's subscribers (DOES 1-10) distributed the end users' transmissions to other members of the swarm.

100.    In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Works here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

101.    Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Work.

*7. The Plaintiffs' Computer Investigator Identified Leaseweb's IP Addresses as Participants in Swarms That Were Distributing Plaintiffs' Copyrighted Works.*

20-023P

102.    The Plaintiffs retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work.

103.    MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

104.    MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of the Unique Hash Number.

105.    For example, the IP addresses, Unique Hash Numbers, and hit dates contained in Exhibit "2" accurately reflect what is contained in the evidence logs.

106.    The logged information in Exhibit "2" show that Defendants' subscribers (including but not limited to DOES 1-10) distributed pieces of the Plaintiffs' copyrighted Works identified by the Unique Hash Number.

107.    End users' (DOES 11-100's) computers used the identified IP addresses in Exhibit "2" to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

108.    MEU's agent analyzed each BitTorrent "piece" distributed by the IP addresses listed on Exhibit "2" and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Works.

109.    MEU's agent viewed the Works side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

20-023P

**C. The Operator of the YTS website confirmed that the end users downloaded torrent files for copying the Work from the YTS website.**

110.    The YTS website operator maintained records of activity of registered user accounts.  *See* Exhibit "3" at pg. 71 (Certificate of Authenticity).

111.    As shown in Exhibit "3", the records include the email address of the registered user account, the torrent files the registered account downloaded, the IP address from where the registered user accessed the YTS website, and the time.

112.    The records show end users downloaded the torrent files for reproducing Plaintiffs' motion pictures such as *The Brass Teapot*, *Hellboy*, *Rambo V: Last Blood*, *Angel Has Fallen*, *London Has Fallen*, *2 Guns*, *And So It Goes*, *Beyond a Reasonable Doubt*, *Flypaper*, *Lone Survivor*, *The Hurricane Heist, The Last Full Measure*, *The Ledge, Universal Soldier Day of Reckoning,* and *I Feel Pretty* from IP addresses assigned to Defendant Leaseweb and in, some cases, in Manassas, Virginia.

**D. Defendant Leaseweb's subscribers distributed copies of Plaintiffs' Works.**

113.    Defendant Leaseweb's subscribers distributed at least pieces of each of Plaintiffs' Works over network connections to other peers in the Swarm from IP addresses allocated from Defendant Leaseweb with file names that included modified copyright management information ("CMI").

114.    Defendant Leaseweb allocated IP addresses 207.244.76.220, 207.244.76.224 and 207.244.76.228 to its subscriber LiquidVPN.

115.    LiquidVPN distributed copies of the motion pictures *Future World*, *Speed Kills*, *Hellboy*, *London Has Fallen* by the file names: Future World (2018) [BluRay] [720p] [YTS.AM];

Speed Kills (2018) [BluRay] [720p] [YTS.AM]; Hellboy (2019) [WEBRip] [720p] [YTS.LT]; and London Has Fallen 2016 1080p BluRay x264 DTS-JYK from IP address 207.244.76.220.

116.    LiquidVPN distributed copies of the motion pictures *In Dubious Battle*, *The Hitman's Bodyguard*, *The Cobbler*, *Colossal, Disturbing the Peace,  London Has Fallen*, *Revolt*, *Rambo V: Last Blood* by the file names: In.Dubious.Battle.2016.BRRip.XviD.AC3-EVO; The.Hitmans.Bodyguard.2017.WEBRip.x264-FGT;       The       Cobbler       (2014)       [1080p]; Colossal.2016.1080p.WEB-DL.AAC2.0.H264-FGT;  Disturbing  The  Peace  (2020)  [1080p] [BluRay]  [5.1]  [YTS.MX];  London  Has  Fallen  (2016)  [1080p]  [YTS.AG];  Revolt  (2017) [YTS.AG];    Rambo.Last.Blood.2019.HC.HDRip.XviD.AC3-EVO[TGx]    from    IP    address 207.244.76.224.

117.    LiquidVPN distributed copies of the motion pictures *Future World*, *The Professor and the Madman*, *Speed Kills, Hellboy*, *Hunter Killer*,  *London Has Fallen, Rambo V: Last Blood,* and *I Feel Pretty* by the file names: Future World (2018) [BluRay] [720p] [YTS.AM]; Speed Kills (2018)   [BluRay]   [720p]   [YTS.AM];   Hellboy.2019.720p.HDCAM.900MB.1xbet.x264-BONSAI[TGx];    Hellboy.2019.KORSUB.HDRip.x264-STUTTERSHIT;    Hellboy    (2019) [WEBRip]  [720p]  [YTS.LT];  Hunter  Killer  (2018)  [BluRay]  [1080p]  [YTS.AM]; Hunter.Killer.2018.720p.BRRip.x264.MkvCage.ws.mkv; Hunter.Killer.2018.1080p.BluRay.x264-DRONES[EtHD]; and London Has Fallen 2016 1080p BluRay x264 DTS-JYK from IP address 207.244.76.228.

### E.    Defendant Leaseweb's subscribers promote and encourage their end users to pirate copyright protected Works including Plaintiffs'.

118.    Defendant Leaseweb's subscribers such as its VPN customers (LiquidVPN,  and DOES 1-10) promote their services for the purpose of infringement.

20-023P

119.    Leaseweb's subscriber ZenMate advertises specific priced VPN service "Ultimate" that includes "P2P torrent support". https://zenmate.com/pricing [last accessed on May 25, 2021] (excerpt below).



120.    ZenMate even tells its end users that "Legally, you can use the Popcorn Time app if you don't store or download digital copyrighted content." https://zenmate.com/academy/popcorntime-vpn [last accessed on May 25, 2021] (excerpt below).

121.    ZenMate advertises its VPN service as "the perfect tool to hide your IP address so you can watch movies and TV shows on Popcorn Time anonymously."  Id.



122.   ZenMate states, "We have a strict no-logs policy and we never record any of our users' internet activity. This way you can rest assured knowing nobody can find out you're using Popcorn Time."  Id.

123.   ZenMate advertises its "kill switch feature" whereby "…If your VPN service drops for any reason, ZenMate immediately shuts down your internet connection to make sure nobody will find out you're using Popcorn Time." Id.

124.   Leaseweb's subscriber LiquidVPN states on its website that their VPN service is the "Best VPN for Torrenting and P2P Filesharing today" over the image of the notorious movie piracy website Pirate Bay. *See*   https://www.liquidvpn.com/best-vpn-for-torrenting/ [last accessed on Feb. 23, 2021] (excerpt below).

20-023P



125.    LiquidVPN states their LiquidVPN Service can be used to "Watch Popcorn Time without being detected by your ISP and P2P tracking software".  *See* https://www.liquidvpn.com/popcorn-time-vpn/ [last accessed on Feb. 23, 2021]. (excerpt below).



21

20-023P

126.    LiquidVPN further states, "Experience everything Popcorn Time has to offer in the United States and the UK. Except the risks", "Stream Content Anonymously. Why bother risking complaints from your ISP, settlement demands, threats and jail time for streaming your favorite TV show." *See* https://www.liquidvpn.com/popcorn-time-vpn/ [last accessed on May 21, 2021]. (excerpt below).



127.    DOES 1-10 partner with piracy websites to promote their VPN service as a tool to pirate copyright protected content without getting caught.

128.    DOES 1-10 promote their service on the piracy website YTS with messages such as, "Warnning: Do NOT Get Caught While Downloading!!"

20-023P



129.    DOES 1-10 promote their service on the piracy website YTS with messages such as, "WARNING! Download only with VPN…" and describes their VPN service as a means to, "Protect yourself from expensive lawsuits and fines NOW!"



20-023P

130.    DOES 1-10 promote their service on the piracy website YTS specifically next to title art of Plaintiffs' Works available to be pirated.



*F. Defendant Leaseweb's subscribers (DOES 1-10) knew the Copyright Management Information included in the files they distributed to other peers had been removed or altered without the authority of Plaintiffs.*

131.    Legitimate file copies of the Works include CMI indicating the respective title.

132.    The initial seeder of the infringing file copies of Plaintiff's Work added wording to the file titles to "brand" the quality of piracy files he or she released and attract further traffic to his or her website.

20-023P

133.    For example, the initial seeder of the infringing file copies of *Angel Has Fallen* added the wording "YTS" to the file titles to brand the quality of piracy files he or she released and attract further traffic to the YTS website.

134.    The word YTS is not included in the file title of legitimate copies or streams of the Plaintiffs' Works.  The initial seeders of the Work altered the title to falsely include the words "YTS" in the CMI.

135.    The file copies Defendant Leaseweb's subscribers and end users (DOES 1-100) distributed to other peers in the Swarm included the altered CMI in the file title.

136.    Defendants DOES 1-100 knew that FGT, YTS and RARBG were not the author of Plaintiffs' Works.

137.    Defendants DOES 1-100 knew that FGT, YTS and RARBG were not a licensed distributor of Plaintiffs' Works.  Indeed, the YTS website includes a warning to this effect.

138.    Defendants DOES 1-100 knew that the CMI that included YTS and RARBG in the file names was false.

139.    Defendants DOES 1-100 knew that the file copies of the Work that they distributed to other peers from in the Swarm included the altered CMI without the authority of Plaintiffs.

140.    Defendants DOES 1-100 knew that the CMI in the title they distributed to other peers in the Swarm included the altered CMI without the authority of Plaintiffs.

141.    Defendants DOES 1-100 knew that the false or altered CMI in the titles would induce, enable, facility or conceal infringements of the Works when they distributed the false CMI, altered CMI or Works including the false or altered CMI.

142.    Namely, DOES 1-100 knew that other recipients would see the file titles and use the altered CMI to go to the website such as YTS from where the torrent files originated to obtained unlicensed copies of the Work.

143.    By providing the website in the altered CMI to others, Defendants DOES 1-100 induced, enabled and facilitated further infringements of the Works

144.    Indeed, Defendants' subscribers such as LiquidVPN promote their VPN services for accessing piracy website such as YTS and RARBG and using Popcorn Time.

**G. Defendant Leaseweb had knowledge that its subscribers were infringing Plaintiffs' Works by distributing file copies of the Works with altered CMI but continued to provide service to its subscribers**

145.    Plaintiffs engaged MEU to generate Notices of infringements ("Notices") styled per 17 U.S.C. §512(c)(3) of the DMCA to be sent to service providers of IP addresses where MEU confirmed infringement of copyright protected content.

146.    Each Notice included at least the name of the copyright owner, the title of the Work, the manner by which it was infringed, the infringing file name which includes the altered CMI, the IP address and port number at where infringement was confirmed and the time of infringement down to the second.  *See* Exhibit "4" (excerpt below).

Protocol: BITTORRENT
Infringed Work: Hellboy
Infringing FileName: Hellboy (2019) [WEBRip] [1080p] [YTS.LT] Infringing FileSize: 2088501368 Infringer's IP Address: 209.58.139.35 Infringer's Port: 63368 Initial Infringement Timestamp: 2020-08-22 17:44:59

147.    MEU determines the proper abuse contact email address for the service provider assigned the IP addresses at issue from publicly available information from ARIN.

148.    Plaintiffs' agent sends the Notice to Defendant Leaseweb's abuse contact email address (abuse@us.leaseweb.com).

26

149.    Leaseweb is a member of ARIN and receives IP addresses from ARIN.

150.    Leaseweb is required to update the WHOIS records for the IP addresses it reassigns or reallocates to its subscribers per its registration agreement with ARIN.

151.    Plaintiffs' agent has sent over 32,000 Notices to Leaseweb concerning infringements of copyright protected Works including Plaintiffs'at IP addresses assigned to Leaseweb from ARIN.

152.    Leaseweb failed to update the ARIN records to show that these IP addresses were reassigned to its subscribers.

153.    Plaintiffs' agent sent over 8600 Notices to Leaseweb concerning infringement of the motion picture *Angel Has Fallen* at IP addresses assigned to Leaseweb from ARIN.

154.    Plaintiffs' agent sent over 6950 Notices to Leaseweb concerning infringement of the motion picture *Rambo V: Last Blood* at IP addresses assigned to Leaseweb from ARIN.

155.    Plaintiffs' agent sent over 2300 Notices to Leaseweb concerning infringement of the motion picture *Outpost* at IP addresses assigned to Leaseweb from ARIN.

156.    Plaintiffs' agent sent over 2000 Notices to Leaseweb concerning infringement of the motion picture *Hellboy* at IP addresses assigned to Leaseweb from ARIN.

157.    Plaintiffs' agent sent over 1907 Notices to Leaseweb concerning infringement of the motion picture *Ava* at IP addresses assigned to Leaseweb from ARIN.

158.    Plaintiffs' agent sent over 1400 Notices to Leaseweb concerning infringement of the motion picture *Tesla* at IP addresses assigned to Leaseweb from ARIN.

159.    Plaintiffs' agent sent over 1200 Notices to Leaseweb concerning infringement of the motion picture *Kill Chain* at IP addresses assigned to Leaseweb from ARIN.

20-023P

160.    Plaintiffs' agent sent 400 Notices to Leaseweb concerning observed infringements at each of IP addresses 209.58.139.35, 209.58.139.34, 209.58.130.210, 209.58.135.106, 209.58.137.94, 209.58.135.72, and 209.58.135.74 (total of over 2800 Notices for these seven IP addresses).

161.    Upon information and belief, other rightsholders had similar Notices sent to Leaseweb concerning infringing activity at IP addresses assigned to Defendant from ARIN.

162.    Leaseweb failed to terminate the subscribers such as LiquidVPN, DOES 1-10 or the accounts associated with these IP addresses or take any meaningful action in response to these Notices.

163.    Leaseweb failed to even forward one or more of the Notices to its subscribers such as to LiquidVPN or DOES 1-10.

164.    Leaseweb continued to provide service to the subscribers such as LiquidVPN and DOES 1-10 despite knowledge that its subscribers were using the service to engage and facilitate massive piracy of copyright protected Works including Plaintiffs'.

165.    Even after Plaintiffs' counsel sent a letter to Leaseweb on Oct. 21, 2021 requesting Leaseweb to terminate the accounts of subscribers assigned certain IP addresses where flagrant piracy had been confirmed, Leaseweb has continued to provide service.

166.    Besides one cursory letter of Nov. 20, 2021 (Exhibit "5"), Leaseweb has ignored written requests to discuss this matter from Plaintiffs.

### H.  Defendant Leaseweb controls the conduct of its subscribers.

167.    Defendant Leaseweb can terminate the accounts of its' subscribers at any time.

168.    Leaseweb promptly suspends subscriber accounts when said subscribers failed to pay for service.

169.    For example, Leaseweb states that it will "immediately suspend…Services…in the event that…Customer does not pay an invoice within the Payment Term." https://www.leaseweb.com/sites/default/files/Legal/LSW_US_B2B_Sales_Schedule%20_v1March2021_Leaseweb_Sales_Terms_and%20_Conditions.pdf [last accessed on May 20, 2021].

170.    Leaseweb monitors its subscribers' access to its service.  For example, Leaseweb states that it will "immediately suspend…Services…in the event that…Customer's consumption of electricity exceeds Basic Power…Customer's consumption of Data Traffic or Bandwidth exceeds the Committed Data Traffic or the Committed Bandwidth.  Id.

### I.  Defendant Leaseweb does not have a safe harbor from liability.

171.    As part of the DMCA, Congress created a safe harbor that limits the liability of a service provider for copyright infringement when their involvement is limited to, among other things, "transmitting, routing, or providing connections for, material through a system or network controlled or operated by or for the service provider." 17 U.S.C. § 512(a). To benefit from this safe harbor, however, an ISP must demonstrate that it "has adopted and reasonably implemented...a policy that provides for the termination in appropriate circumstances of subscribers...who are repeat infringers." 17 U.S.C. § 512(i)(1)(A).

172.    Defendant Leaseweb has not adopted and/or reasonably implemented a policy of terminating repeat infringers.

173.    Plaintiffs' agent has sent over 32,000 Notices to Leaseweb concerning infringements at IP addresses Leaseweb publishes as assigned to it.

174.    Leaseweb has failed to terminate the accounts and/or take any meaningful actions against its subscribers in response to these Notices consistent with a reasonably implemented policy for

termination of subscribers and account holders of the service provider's system or network who are repeat infringers necessary to support a safe harbor from liability ("policy").

175.    In its cursory letter of Nov. 20, 2021 (Exhibit "5"), Leaseweb admitted that it takes no action besides forwarding Notices to its subscribers.  *See* Exhibit "5" ("[Leaseweb] does not count DMCA notices as strikes…. Leaseweb's customers are responsible for implementing their own repeat infringer policy.")

176.    Congress created a safe harbor that limits the liability of a service provider for copyright infringement "…by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider, if the service provider" does not have the requisite knowledge, "…responds expeditiously to remove or disable access to, the material…" and has the appropriate designated agent for receiving notices.  17 U.S.C. § 512(c)(1), (2).

177.    Leaseweb leases use of its servers to its subscribers so that the subscribers can host VPN networks on its servers.

178.    Leaseweb's subscribers (LiquidVPN and DOES 1-10) store copies of Plaintiffs' Works on Leaseweb's servers and use Leaseweb's servers to distribute copies of Plaintiffs' Works.

179.    The over 32,000 Notices Plaintiffs' agent sent to Leaseweb concerning infringements included information such as the IP addresses that Leaseweb could have used to remove or disable access to infringing material.

180.    Leaseweb failed to respond and expeditiously remove or disable access to the material in response to the over 32,000 Notices Plaintiffs' agent sent to Leaseweb.

181.    In its cursory letter of Nov. 20, 2021 (Exhibit "5"), Leaseweb admitted that it takes no action besides forwarding Notices to its subscribers.  *See* Exhibit "5" ("[Leaseweb] does not count DMCA

notices as strikes…. Leaseweb's customers are responsible for implementing their own repeat infringer policy.")

182.    Until Sept. 17, 2019, Leaseweb failed to designate and register an agent with the Copyright Office as provided by 17 U.S.C. § 512(c)(2).

183.    Leaseweb's conduct renders it ineligible for safe harbor immunity from copyright liability under the DMCA.

### J. The copyright infringements arise from Defendant Leaseweb's advertisements.

184.    Defendant Leaseweb advertises that its dedicated servers allow subscribers to "Get high performance without the high costs. There is a Leaseweb Dedicated Server available for every need – and now, with 3x more traffic included by default, there's never been a better time to buy." https://www.leaseweb.com/dedicated-servers#US [last accessed on May 20, 2021].

185.    Leaseweb advertises colocation services for "…delivering up to 10+ Tbps of bandwidth capacity, blazing speed, and a core network uptime of 99.999%." https://www.leaseweb.com/colocation [last accessed on May 20, 2021].

186.    Leaseweb advertises dedicated server in Washington, DC that includes 100 Mbps of bandwidth.  *See* https://www.leaseweb.com/campaigns/colocation-2021 [last accessed on May 20, 2021].

187.    Leaseweb's subscribers are motivated to become customers from Defendant's advertisements.

188.    Leaseweb's subscribers are motivated to become customers from the knowledge of Leaseweb's practice of ignoring notices of infringements or failing to take any meaningful action in response to said notices.

### VI. FIRST CLAIM FOR RELIEF
### (Direct Copyright Infringement against Defendants DOES 1-100)

31

20-023P

189.  Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

190.  Plaintiffs are the copyright owners of the Works, each of which contains an original work of authorship.

191.  Defendants DOES 11-100 copied the constituent elements of these copyright-protected Works.

192.  By participating in the BitTorrent swarms with others, Defendants DOES 11-100 distributed at least a piece of each of the copyright protected Works to others.

193.  Defendants DOES 1-10 distributed said at least a piece over their network (provided by Defendants DOES 1-10) with knowledge that they are engaging in infringing activity.

194.  DOES 1-10 connects DOES 11-100 to torrent sources to provide said at least a piece.

195.  DOES 1-10 distribute said at least a piece for Defendants DOES 11-100 with knowledge that said at least a piece infringes Plaintiffs' rights.

196.  Plaintiffs did not authorize, permit, or provide consent to Defendants DOES 1-100 to copy, reproduce, distribute or perform their Works.

197.  As a result of the foregoing, Defendants DOES 1-100 violated the Plaintiffs' exclusive right to reproduce the Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501.

198.  As a result of the foregoing, Defendants DOES 1-100 violated the Plaintiffs' exclusive rights to distribute copies of the Work in copies, in violation of 17 U.S.C. §§ 106(3) and 501.

199.  Defendants DOES 1-100's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

200.    Plaintiffs have suffered damages that were proximately caused by the Defendants DOES 1-100's copyright infringements including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

## VII. SECOND CLAIM FOR RELIEF
### (Contributory Copyright Infringement based upon material contribution against Leaseweb and DOES 1-10)

201.    Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

202.    Through its activities, Defendants Leaseweb and DOES 1-10 knowingly and intentionally took steps that are substantially certain to result in direct infringement of Plaintiffs' Copyrighted Works, and that have resulted in such direct infringement in violation of Plaintiffs' copyrights.

203.    Despite Defendant Leaseweb's knowledge that its subscribers such as LiquidVPN, ZenMate and DOES 1-10 are using its service to engage in widescale copyright infringements, Defendant Leaseweb has failed to take reasonable steps to minimize the infringing capabilities of its service.

204.    Defendant Leaseweb is liable as contributory copyright infringers for the infringing acts of its subscribers such as LiquidVPN, ZenMate and Defendants DOES 1-10.  Defendant Leaseweb has actual and constructive knowledge of the infringing activity of its subscribers. Defendant Leaseweb knowingly caused and otherwise materially contributed to these unauthorized distributions of Copyright Plaintiffs' Works.

205.    Despite Defendants DOES 1-10's knowledge that end users such as DOES 11-100 are using its service to engage in widescale copyright infringements, DOES 1-10 have failed to take reasonable steps to minimize the infringing capabilities of its service.

20-023P

206.     Defendants DOES 1-10 are liable as contributory copyright infringers for the infringing acts of their end users such as Defendants DOES 11-100.  Defendants DOES 1-10 have actual and constructive knowledge of the infringing activity of their end users.  Defendant DOES 1-10 knowingly caused, encouraged and otherwise materially contributed to these unauthorized distributions of Copyright Plaintiffs' Works.

207.     Defendants Leaseweb and DOES 1-10's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

208.     By engaging in the contributory infringement alleged in this Complaint, Defendants Leaseweb and DOES 1-10 deprived not only the producers of the Works from income that could have been derived when the respective film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets and their employees, and, ultimately, the local economy. Defendants' misconduct therefore offends public policy.

## VIII. THIRD CLAIM FOR RELIEF
### (Vicarious Infringement against Leaseweb and DOES 1-10)

209.     Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

210.     Defendant Leaseweb is vicariously liable for the infringing acts of its subscribers' infringements including but not limited to the subscribers' direct infringements of Plaintiffs' exclusive right to distribute copies of their Works.

211.     Defendants DOES 1-10 are vicariously liable for the infringing acts of their end users including but not limited to the end users' direct infringements of Plaintiffs' exclusive right to distribute and reproduce copies of their Works.

34

212.    Defendant Leaseweb has the right and ability to supervise and control the infringing activities that occur through the use of its service, and at all relevant times has derived a direct financial benefit from the infringement of Plaintiffs' copyrights.

213.    Defendant Leaseweb has refused to take any meaningful action to prevent the widespread infringement by its subscribers such as ZenMate, LiquidVPN and DOES 1-10 despite having actual knowledge.  Indeed, the ability of subscribers such as LiquidVPN, ZenMate and DOES 1-10 to use Defendant Leaseweb's high speed and high bandwidth service to distribute copies of Plaintiffs' Works for end users such as DOES 11-100 serves as a powerful draw for users of Defendant Leaseweb's service.

214.    Defendants DOES 1-10 have the right and ability to supervise and control the infringing activities that occur through the use of its service, and at all relevant times has derived a direct financial benefit from the infringements of Plaintiffs' copyrights.

215.    Defendants DOES 1-10 have refused to take any meaningful action to prevent the widespread infringement by its subscribers such as DOES 11-100 despite having actual knowledge.  Indeed, the ability of subscribers such as DOES 11-100 to use Defendants DOES 1-10's service to distribute copies of Plaintiffs' Works while concealing their identities acts as a powerful draw for users of Defendants DOES 1-10's service.

216.    Defendants Leaseweb and DOES 1-10 are therefore vicariously liable for the unauthorized distribution of Plaintiffs' Works.

## VIII. FOURTH CLAIM FOR RELIEF
### (Digital Millennium Copyright Act Violations)

217.    Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

20-023P

218.     Defendant Leaseweb's subscribers such as DOES 1-10 and LiquidVPN encourage their end users (DOES 11-100) to access torrent files for copying copyright protected Works from notorious movie piracy websites such as YTS.

219.     Defendant Leaseweb's subscribers such as LiquidVPN and Defendants DOES 1-10, and their end users DOES 11-100 knowingly and with the intent to induce, enable, facilitate, or conceal infringement of the Plaintiffs' copyright protected Works, distributed copyright management information ("CMI") that falsely included false wording such as "RARBG", "FGT" and "YTS" in violation of 17 U.S.C. § 1202(a)(2).

220.     Defendant Leaseweb's subscribers such as LiquidVPN and Defendants DOES 1-10, and their end users DOES 11-100, without the authority of Plaintiffs, or the law, distributed removed or altered CMI knowing that the CMI had been removed or altered to include the wording "RARBG", "FGT" and "YTS" without the authority of Plaintiffs and knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of Plaintiffs' copyright protected Works in violation of 17 U.S.C. § 1202(b)(2).

221.     Defendant Leaseweb's subscribers such as LiquidVPN and Defendants DOES 1-10, and their end users DOES 11-100, without the authority of Plaintiffs, or the law, distributed Plaintiffs' Copyright protected Works knowing that the CMI had been removed or altered to include the wording RARBG", "FGT" or "YTS", and knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of the copyright protected Works in violation of 17 U.S.C. § 1202(b)(3).

222.     Particularly, Defendant Leaseweb's subscribers such as LiquidVPN and Defendants DOES 1-10, and their end users DOES 11-100 knew that the CMI in the file names of the pieces had been altered to include the wording "RARBG", "FGT" or "YTS".

20-023P

223.    Particularly, Defendant Leaseweb's subscribers such as LiquidVPN and Defendants DOES 1-10, and their end users DOES 11-100 distributed the file names that included CMI that had been altered to include the wording "RARBG", "FGT" or "YTS".

224.    Defendant Leaseweb's subscribers such as LiquidVPN and Defendants DOES 1-10, and their end users DOES 11-100 knew that the wording "RARBG", "FGT" or "YTS" originated from notorious movie piracy websites which they themselves promoted.

225.    Defendant Leaseweb's subscribers such as LiquidVPN and Defendants DOES 1-10, and their end users DOES 11-100's acts constitute violations under the Digital Millennium Copyright Act, 17 U.S.C. § 1202.

226.    Defendants Leaseweb and DOES 1-10 are secondarily liable for the DMCA violations of their subscribers and end users.  Defendants Leaseweb and DOES 1-10 had actual and constructive knowledge of their subscribers' and end users' DMCA violations.  Defendants Leaseweb and DOES 1-10 knowingly caused and otherwise materially contributed to these DMCA violations.

227.    Defendants Leaseweb and DOES 1-10 are vicariously liable for the DMCA violations of their subscribers and end users. Defendants Leaseweb and DOES 1-10 have the right and ability to supervise and control the DMCA violations that occur through the use of their service, and at all relevant times has derived a direct financial benefit from the DMCA violations complained of herein.

228.    Defendant Leaseweb has refused to take any meaningful action to prevent the widespread DMCA violations by its subscribers. Indeed, the ability of Defendant Leaseweb's subscribers to distribute torrent files from torrent websites such as YTS that Leaseweb's subscribers themselves promote and obtain file copies of the Works with altered CMI and

distribute said copies while concealing their end users' activities acts as a powerful draw for subscribers of Defendant Leaseweb.  Defendant Leaseweb is therefore vicariously liable for its subscribers' DMCA violations.

229.    Defendants DOES 1-10 have has refused to take any meaningful action to prevent the widespread DMCA violations by their end users. Indeed, the ability of Defendants DOES 1-10's end users to distribute torrent files from using BitTorrent Clients such as Popcorn Time that DOES 1-10 themselves promote and obtain file copies of the Works with altered CMI and distribute said copies while concealing their end users' activities acts as a powerful draw for subscribers of Defendants DOES 1-10.  Defendants DOES 1-10 are therefore vicariously liable for their end users' DMCA violations.

230.    Plaintiffs are entitled to an injunction to prevent Defendants from engaging in further violations of 17 U.S.C. § 1202.

231.    Plaintiffs are entitled to recover from Defendants the actual damages suffered by Plaintiffs and any profits Defendants have obtained as a result of its wrongful acts that are not taken into account in computing the actual damages. Plaintiffs are currently unable to ascertain the full extent of the profits Defendant has realized by its violations of 17 U.S.C. § 1202.

232.    Plaintiffs are entitled to elect to recover from Defendants statutory damages for its violations of 17 U.S.C. § 1202.

233.    Plaintiffs are further entitled to costs and reasonable attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully request that this Court:

(A) enter permanent injunctions enjoining Defendants from continuing to commit  DMCA violations, and infringe and contribute to infringements of the Plaintiffs' copyrighted Works;

38

20-023P

(B) order Defendant Leaseweb to terminate all service to its subscribers ZenMate and LiquidVPN;

(C) order Defendants Leaseweb and DOES 1-10 to adopt a policy that provides for the prompt termination of subscribers and end users that engage in more than three infringements of copyright protected Works;

(D) order Defendants Leaseweb and DOES 1-10 to block ports 6881-6889 on all of the servers under their control to prevent further pirating of Plaintiffs' Works via the BitTorrent protocol;

(E) award the Plaintiffs their actual damages from the copyright infringements and Defendants' profits in such amount as may be found; alternatively, at Plaintiffs' election, for statutory damages pursuant to 17 U.S.C. § 504(a) and (c) against Defendants;

(F) award the Plaintiffs actual damages from the DMCA violations and Defendants' profits in such amount as may be found; or, in the alternative, at Plaintiffs' election, for statutory damages per DMCA violation pursuant to 17 U.S.C. § 1203(c) for violations of 17 U.S.C. § 1202 against Defendants;

(G) award the Plaintiffs their reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505 and/or 17 U.S.C. § 1203(b)(5); and

(H) grant the Plaintiffs any and all other and further relief that this Court deems just and proper.

The Plaintiffs hereby demand a trial by jury on all issues properly triable by jury.

DATED: Kailua Kona, HI, May 25, 2021.

Respectfully submitted,

 /s/ Kerry S. Culpepper

20-023P

Kerry S. Culpepper,
Virginia Bar No. 45292
Counsel for Plaintiffs
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Tel.: (808) 464-4047
Fax.: (202) 204-5181
kculpepper@culpepperip.com

20-023P